## Patrick H. O'Donnell, Administrator, Appellee, v. Erie Railroad Company, Appellant.

## Gen. No. 15,451.

MASTER AND SERVANT—*duty as to machinery.   Held,* under the evidence, that the defendant owed the deceased the duty to use reasonable care to keep a platform and machinery in such position and condition as to be reasonably safe and free from danger to one properly passing by, although not employed to use the same; that the defendant was bound to anticipate that a person, especially a boy, passing by a windlass, the handle of the crank of which was only two feet above the dock, might jump or step upon the handle.

Action in case for death caused by alleged wrongful act.   Appeal from the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.   Heard in this court at the March term, 1909. Affirmed.   Opinion filed January 3, 1911.   Rehearing denied January 23, 1911.

W. O. JOHNSON and GALE & JOHNSON, for appellant.

THEODORE G. CASE, for appellee.

MR. PRESIDING JUSTICE BAKER delivered the opinion of the court.

This is an appeal by the defendant from a judgment

for $2,000 recovered in an action under the statute for causing death by negligence. Plaintiff's intestate was an office boy in the service of defendant at its warehouse and dock in Chicago. The dock extended from Randolph street to Washington on the east side of the south branch of the Chicago river, and was seventeen feet wide. East of and adjoining the dock was a two-story warehouse of defendant, in the south end of which, on the second floor, was the office of defendant, in which the deceased was employed. The floor of the warehouse was several feet above the dock. About the middle of the warehouse was a door opening on the dock. From this door a platform extended to the edge of the dock, which was so constructed that the outer end of it could be raised or lowered, so that whether a vessel at the dock was light and high up out of the water, or laden and deep down in the water, the platform served as a gang plank over which freight was taken from the vessel to the warehouse. This platform was called by some of the witnesses a "tramway," apparently because under it were two endless chains running parallel with the platform, to which were attached dogs or clutches extending above the surface of the platform, by means of which articles discharged from the vessel onto the platform were carried into the warehouse. The platform was raised by means of a windlass worked by hand. There were two posts ten or twelve feet high placed on a line north and south, eight feet from the warehouse and nine feet from the edge of the dock. The axis of the windlass was an iron shaft attached to these posts about two feet above the dock. There was another shaft directly over the first, attached to the top of the posts, and from this shaft the platform was suspended by chains. There was a wheel on each shaft and over the wheels passed an endless chain, so that as the windlass was turned, the upper shaft was also turned, and the platform raised by the winding of the chains by which it was suspended around the upper shaft. The crank

which turned the axis of the windlass was at the south end of the shaft just south of the south post. Its arm was about two feet and its handle two and a half or three feet long. On the axis of the windlass was a ratchet wheel with a dog or pawl to engage with the teeth of the wheel and prevent it from turning in the opposite direction. The platform was so heavy that at least four men were required to work the windlass by which it was raised. It was the custom of the defendant, when the work of unloading a boat ceased, to lower the platform down to the dock and remove the crank from the windlass. There had been no boat at the dock for several hours before the time of the accident, yet the platform had not been lowered nor the crank removed from the windlass. As the deceased was so near to the crank as to be struck by it, the dog or pawl became detached and disengaged from the ratchet wheel, and the weight of the platform caused the windlass to turn backward with such force that the crank, striking the deceased, inflicted on him such injuries as caused his instant death.

We think that from the evidence the jury might properly find that the deceased, when he came to his death, was, in the course of his employment and in the proper discharge of its duties, passing north along the dock, intending to go beyond the platform. He had nothing to do with the handling of freight nor with the platform in question or the machinery by which it was raised or lowered. We also think that the defendant owed the deceased the duty to use reasonable care to keep the platform and machinery in such position and condition as to be reasonably safe and free from danger to one properly passing by, although not employed to use the same; that the defendant was bound reasonably to anticipate that a person, especially a boy, passing by a windlass, the handle of the crank of which was only two feet above the dock, might jump or step upon the handle.

The testimony of the only witness who saw plaintiff

alive after he left the office of defendant, tends to show that he jumped or stepped upon the handle of the crank and that the crank immediately began to turn backward, striking deceased and causing his death. The dog or pawl when in place in the ratchet wheel prevented the weight of the platform from turning the shaft backward, and it is clear that it was because the dog or pawl became detached and disengaged that the weight of the platform caused the shaft and crank to turn backward. There is evidence on the part of plaintiff that the dog or pawl was at the time of the accident, and had been for some days before that time, loose; that some days before the accident, as the men were raising the platform, they had one man hold the cog in place; and evidence on the part of the defendant that the dog or pawl was not loose or in any way defective. Then the jury had the fact that the pawl became detached and disengaged without any apparent cause other than the jumping of the deceased on the handle of the windlass and the fact that the handle was left on the windlass contrary to the usual custom.

The negligence alleged in the declaration is the negligent failure to keep the dog in a reasonably safe condition, and the negligent failure to remove the crank from the windlass.

We cannot say, on the evidence in the record, that the jury might not properly find that the defendant was guilty of negligence alleged in the declaration which directly contributed to the death of plaintiff's intestate, and that the latter was in the exercise of reasonable care for his own safety. It follows from what has been said that in our opinion the court did not err in refusing to give for the defendant the following instruction:

"If you believe from the evidence that the deceased, Arthur Krause, jumped upon the handle of a certain machine, while he was playing and was not then and there doing any work required of him by the defendant, and he was then and there killed by reason of said handle turning round, then you should find the defend-

ant not guilty.''

The record is, we think, free from error, and the judgment is affirmed.

*Affirmed.*